## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAM KAMYANS,<br>440 L Street, NW<br>Washington, D.C. 20001,<br><br>AMANDA KAMYANS,<br>440 L Street, NW<br>Washington, DC 20001,<br><br>PETROLEUM MUTUAL RESERVE<br>DEFICIENCY FUND, LLC,<br>355 Cavalla Street<br>Henderson, NV 89074,<br><br>                Plaintiffs,<br><br>v.<br><br>VINCENT POPPITI,<br>Fox Rothschild LLP,<br>919 North Market Street, Suite 300<br>Wilmington DE 19899-2323,<br><br>                Defendant. | Case No. _____<br><br>JURY TRIAL REQUESTED |

## COMPLAINT

Plaintiffs Sam Kamyans, Amanda Kamyans, and Petroleum Mutual Reserve Deficiency Fund, LLC ("Petroleum Mutual"), by and through their undersigned counsel, bring this Complaint against Defendant Vincent Poppiti, and in support thereof allege the following:

### INTRODUCTION

1.      This is a case of breach of fiduciary duty and egregious waste by the liquidating trustee of what once was a growing and successful hedge fund.

2.      Plaintiffs are all investors in a small hedge fund called Fernbank, LLC ("Fernbank" or the "Fund"). At its peak, shortly before it was closed down, Fernbank had about 25 investors and somewhere between $9 and $10 million in assets. Plaintiffs are two of the fund's largest investors. At

1

one point their investments combined totaled well over a million dollars.  Today, they are owed

collectively over $900,000.

      3.     Defendant was appointed the liquidating trustee of the Fund.  At the time he was

appointed, the Fund had about $3 million in assets.  Since being appointed liquidating trustee, Defendant

has paid himself and his law firm over $2.5 million in legal fees and expenses – an unreasonable and

unconscionable amount representing over 80% of the assets that he was entrusted with.  Despite lavishly

spending the investors' funds, Defendant has failed to recover even a single penny for the benefit of

Fund investors (and is unlikely to do so anytime soon) or distribute a single penny to Plaintiffs or any

other Fund investor.

      4.     Defendant has grossly breached his fiduciary duties to Plaintiffs, and other Fund

investors, by among other things: (1) excessively overpaying himself and the law firm that he hired to

represent the Fund, Fox Rothschild the firm he works for, and the accounting professionals that firm

hired; (2) failing to conduct any investigation into the Fund's operations and finances before needlessly

paying well over $500,000 to reconstruct the Fund's books and records from scratch at tremendous cost

to Fund investors, but in particular Plaintiffs; (3) relying on an inexperienced associate attorney with no

knowledge of hedge funds, accounting or liquidations to handle this matter and not providing her

adequate supervision or guidance; (4) wasting tens of thousands of dollars of Plaintiffs', and other

investors' money, volunteering to assist and prolonging a criminal investigation by the State of Virginia

against the Fund's former managers that resulted in no arrests or charges, and which never had a chance

of  resulting in any money being returned to investors; (5) wasting tens of thousands of dollars

researching, investigating and drafting potential baseless claims against Plaintiff Sam Kamyans that

were never filed, giving that complaint to Mr. Tabatabai for free and then charging those fees to

Plaintiffs; (6) failing to even attempt to recover, much less recover, a single penny of the millions of

dollars of illegal and unauthorized preferential payments made by the Fund's former manager Alex

Tabatabai to himself, his friends and his family; (7) failing to even attempt to recover, much less recover, a single penny of the hundreds of thousands of illegal and unauthorized payments made by Mr. Tabatabai to his own personal lawyers using Fund assets; (8) making tens of thousands of dollars in payments to these same lawyers for debts racked up by Mr. Tabatabai, and later hiring these biased and conflicted lawyers to represent the Fund and provide him advice; (9) stubbornly pursuing, and continuing to pursue, numerous extremely costly and unnecessary litigations against the Fund's former managers that have not resulted in the payment of single penny to the Fund, and are unlikely ever to result in any money being paid to the Fund; (10) failing to create sufficient reserves to pay Plaintiffs pari passu with other Fund investors who received millions in preferential payments, as he was authorized to do by the Order appointing him; and (11) failing to make any distributions to Plaintiffs, or treat them equally with other Fund investors, as he was required to by the governing Fund agreements.

5.     At the time he was appointed, had Defendant done what he should have done and simply distributed the Fund's remaining assets in accordance with the Fund's then existing records and expeditiously and efficiently closed the Fund down, every single investor in the Fund would have received more money, and in some cases significantly more money, then they will receive as result of Defendant's disastrous reign as trustee.  It is not an exaggeration to suggest that this botched liquidation has been the most poorly handled liquidation in the history of Unites States' hedge funds.

6.     Defendant should be held responsible to the investors whose money he held in trust for violating that trust.  He should be required to disgorge all of the fees and expenses that he squandered and paid to his firm, and professionals retained by his firm, and make Plaintiffs whole by paying them the over $900,000 they are owed by the Fund.

## JURISDICTION

7.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

## VENUE

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## PARTIES

9. Plaintiffs Sam and Amanda Kamyans are investors in the Fund and reside in Washington, DC.

10. Plaintiff Petroleum Mutual Reserve Deficiency Fund, LLC is a Nevada LLC and an investor in the Fund.

11. Defendant Vincent J. Poppiti is a retired Delaware family court judge. He is a partner at the law firm Fox Rothschild LLP in their Wilmington, DE office. Upon information and belief, Defendant Poppiti resides in Delaware.

## FACTUAL ALLEGATIONS

### A.    Fernbank Partners and The Fund

12. Matthew Pauls and Alex Tabatabai founded Fernbank Partners in June 2010. Mr. Pauls and Mr. Tabatabai were the sole members and fifty percent co-owners of Fernbank Partners.  Fernbank Partners' sole business was to be the managing member of the Fund, which is a private investment fund, also knowns as a hedge fund.  The Fund raised capital by offering membership interests to qualified investors.

13. As with most, if not all, hedge funds the Fund's members were passive investors and all decisions concerning the Fund were made by its manager, Fernbank Partners.  Pursuant to the Fund's operating agreement, all Fund investors were to be treated equally in all respects, and specifically with respect to the value of their investments and any distributions.

14. The Fund was small, but growing and successful.  It started with a couple of investors and less than $100,000 in assets.  Over the years the Fund grew and, at its peak, when the fund closed

down in November 2014 it had approximately 25 investors and assets between $9 and $10 million.  The Fund provided excellent returns to its investors.

15.     Plaintiffs were two of the Fund's largest investors, and Plaintiff Sam Kamyans was one of its first investors.  Combined, at their peak Plaintiffs' investments were worth well over $1 million.

16.     Other than Plaintiffs, most of the Fund's investors were friends and family of Mr. Tabatabai. The Fund's largest investor, Cindy Kaiser, was Mr. Tabatabai's wife who held an approximately 25% membership interest in the Fund.

**B.      Mr. Tabatabai Illegally Seized Full Control of the Fund**

17.     Following a dispute between Mr. Tabatabai and Mr. Pauls, on October 16, 2014, Mr. Tabatabai, without Mr. Pauls' knowledge or consent, purportedly resolved by himself and on behalf of Fernbank Partners to remove Mr. Pauls as manager for "cause" pursuant to the Fernbank Partners' Operating Agreement.

18.     On October 21, 2014, Mr. Tabatabai, also without Mr. Pauls' knowledge or consent, issued a "Special Notice" to Fund investors declaring that he had removed Mr. Pauls "for cause."  The Special Notice also indicated that Mr. Pauls' purported removal had triggered Fund members "Special Withdrawal Rights" under the Fund Operating Agreement – in essence forcing the wind down and liquidation of the Fund.

19.     After illegally throwing Mr. Pauls out of Fernbank Partners, Mr. Tabatabai proceeded to improperly use Fund assets to fund and prosecute civil claims against Mr. Pauls.  Specifically, without the power or authority to do so, he hired three separate lawyers to purportedly represent himself (Jeremy Bartell), the Fund (Douglas MacLean) and Fernbank Partners (Jeffrey Cohen) along with a purported forensic accountant, and directed all of them, among other things, to investigate and prosecute claims against Mr. Pauls and Plaintiff Mr. Kamyans who Mr. Tabatabai considered an ally of Mr. Pauls, and thus his enemy.  Mr. Tabatabai improperly and illegally paid all of these lawyers with Fund assets.

However, while nominally representing the Fund, each of these lawyers actually took direction solely from Mr. Tabatabai and were in fact acting solely as his personal attorneys and not attorneys of the Fund or Fernbank Partners. Without authority to do so, Mr. Tabatabai illegally paid these attorneys over $300,000 in legal fees and expenses with Fund assets.

20.     Mr. Tabatabai also began winding down the Fund and making unauthorized, illegal and preferential payments to himself and those investors and there were his friends and family members. Specifically, Mr. Tabatabai allocated 75% of the Fund's assets for distribution to investors and kept 25% in reserve to cover liquidation expenses and potential liabilities. In late 2014 or early 2015, all of the Fund's investors other than Plaintiffs received distributions totaling at least 75% of their investment. Mr. Tabatabai's friends and family members, especially his wife the Fund's largest investor, received significantly more that 75% of their investment. Mr. Tabatabai also illegally and without authority distributed roughly $300,000 to himself.

21.     Plaintiffs however did not receive any distributions. Mr. Tabatabai considered Plaintiffs to be allies with Mr. Pauls and, to punish them, he illegally refused with no justification to make any distributions to Plaintiffs. To this day, Mr. and Mrs. Kamyans have not received a penny of their nearly $500,000 investment in the Fund. Petroleum Mutual initially received no distribution from Mr. Tabatabai, but later in 2015 it was subsequently paid a small fraction of its over $800,000 investment in the Fund.

## C.     Defendant Is Appointed Liquidating Trustee

22.     After seizing control of the Fund, Mr. Tabatabai instructed his lawyers to file an arbitration against Mr. Pauls with the American Arbitration Association (the "Arbitration"). The Arbitration was conducted in Washington, D.C. between 2015 and 2017. Mr. Tabatabai purported to bring the action on behalf of himself, Fernbank Partners and the Fund.

23.     Mr. Pauls challenged whether his purported removal had been legal under the Operating Agreements and thus whether Mr. Tabatabai had authority on his own to direct the actions of Fernbank Partners and/or the Fund.  In July 2015, the arbitrator issued a Partial Award determining that Mr. Tabatabai's purported removal of Mr. Pauls from his management position at Fernbank Partners had violated the express provisions of the Fernbank Partners' Operating Agreement and was thus *void ad initio*.  Accordingly, any actions that Mr. Tabatabai had taken on behalf of the Fund after illegally removing Mr. Pauls were all unauthorized, illegal and also null and void.

24.     The arbitrator also determined under Delaware Code § 18-802 that it is was not reasonably practicable for Mr. Pauls and Mr. Tabatabai to continue to carry on the business of Fernbank Partners in conformity with the Fernbank Partners' Operating Agreement and that, therefore, he would appoint a liquidating trustee to wind down Fernbank Partners' affairs.  Pursuant to an email order dated August 6, 2015, the arbitrator appointed Defendant Poppiti to act as liquidating trustee for Fernbank Partners.

25.     Pursuant to a letter dated August 7, 2015, Defendant Poppiti accepted appointment as liquidating trustee for Fernbank Partners.  In that same letter, Defendant Poppiti designated himself to act as liquidating trustee for the Fund.  Doing so created an irreconcilable conflict of interest that Defendant failed to ever recognize or acknowledge, much less adequately address.

26.     Defendant Poppiti is not qualified to liquidate a hedge fund.  He is a retired Delaware family law court judge.  He is a partner in the Delaware office of the law firm Fox Rothschild LLP.  He has no professional experience in hedge fund law or accounting.  Nor does Defendant Poppiti have any professional experience in matters involving the duties or responsibilities owed by investment managers to the private funds for which they perform services.  Nor does Defendant Poppiti have any experience liquidating or otherwise managing or dissolving an investment management company or a private fund.

7

He does not have any professional experience in auditing or accounting practices or securities regulation.

27.     The Fund's investors were not given any input into the selection of Defendant as liquidating trustee for Fernbank Partners of Fernbank.

28.     At the time of Defendant Poppiti's appointment as liquidating trustee, the Fund had approximately $3 million in cash and other assets.

29.     Simultaneously with his appointment, Defendant Poppiti hired his law firm, Fox Rothschild LLP to represent both Fernbank and Fernbank Partners, despite the glaring conflict of interest between the two entities, during the course of the liquidation and arbitration. As a result of his incompetence, Defendant and his law firm have thus far charged this small Fund the unimaginable amount of $2.5 million of the $3 million they were entrusted with for their services to date, and those fees are continuing to accrue.

30.     There is not a single Fund investor that will recover in liquidation from the Fund even a small fraction of the amount of money that Defendant Poppiti has managed to make off with for himself and his law firm. Indeed, *the entire Fund* will recover in liquidation significantly less money than Defendant Poppiti managed to bilk out of this engagement.

31.     By any measure, the liquidation of the Fund has been a financial disaster and a complete waste for everyone but Defendant and his firm.  Despite spending over $2.5 million over the past three years for the supposed benefit of investors, Defendant has not recovered one single penny nor distributed any money to any of the Fund's investors. Instead, the vast majority of money has been paid to Defendant Poppiti and his law firm who continue to rack up fees. Defendant Poppiti has not "liquidated" the Fund, so much as he has squeezed dry that entity for the enrichment of himself, his law firm, and other professionals of his choosing.

**D.     Defendant Poppiti Breached His Fiduciary Duties To Defendant**

32.     Defendant Poppiti's reign as liquidating trustee has been a complete and utter debacle by any measure.  There are several reasons for this.  First, in addition to having no hedge fund or liquidation experience himself, he inexplicably put in charge of this matter a franchise law associate attorney from a suburban Philadelphia office of his law firm with no experience in hedge funds, liquidations, accounting or investigation and gave her little if any support and guidance.  With this inexperienced associate in charge, it is no surprise that this liquidation turned out to be a disaster.

33.     What Defendant should have done is retained competent and experienced counsel, instead of his own firm, and as efficiently as possible distributed the Fund's remaining assets to investors according to the Fund's books and records.  Had he done so, every single investor, but especially Plaintiffs, would have ended up better off compared to what ended up happening.

34.     Instead, Defendant inexplicably conspired with and aided and abetted the egregious breaches of fiduciary that were begun by Mr. Tabatabai while he was solely in charge of the Fund.  By Order dated January 28, 2017, the arbitrator in the Arbitration already has found that Mr. Tabatabai had "acted grossly negligently and in bad faith" and "breached the fiduciary duties of loyalty, good faith and care" to the Fund.  As detailed below, to protect himself and to earn additional fees, Defendant and his lawyers conspired with Mr. Tabatabai and aided and abetted these breaches.

35.     Defendant failed to conduct anything resembling a reasonable investigation into the affairs of the Fund, and other than one short introductory phone call with counsel for Mr. Pauls, relied exclusively on obviously false information provided to him by Mr. Tabatabai and the attorneys that he had hired to represent him and protect the interests of himself and his friends and family members.  The transition of control of the Fund from Mr. Tabatabai to Defendant was seamless.  Defendant simply took over the reins from Mr. Tabatabai and steered the Fund in the exact same direction – over the cliff while protecting the illegal distributions that Mr. Tabatabai made to himself, his friends and his family.

36.    Due to Defendant's and his counsel's incompetence, inexperience and naivete, Defendant was convinced by Mr. Tabatabai that Mr. Pauls, allegedly along with help from Plaintiff Sam Kamyans, had conspired to steal Fund assets. This preposterous conspiracy theory was obviously false and could have been easily disproven had Defendant bothered to talk with Mr. Pauls, his counsel or Mr. Kamyans. Unfortunately, Defendant failed to do any of those things and instead bought Mr. Tabatabai's story hook, line and sinker, ultimately costing Plaintiff and the other Fund investors millions of dollars.

37.    Defendant Poppiti and his team, relying exclusively on false information fed to them by Mr. Tabatabai and his lawyers, set about assisting Mr. Tabatabai in the breaches of fiduciary duty that he has been found to have committed when he was in control, and attempting to justify and prove Mr. Tabatabai's concocted story.  As a result, Defendant:

(a) without any basis continued to fail to make any disbursements to Plaintiffs, even though every other Fund investor was paid at least 75% of their investment by Mr. Tabatabai, and rejected and opposed Plaintiffs repeated attempts to obtain the distributions rightfully owed to them;

(b) failed to create reserves sufficient to pay Plaintiffs pari passu with the other Fund investors even though required to do so by the Fund's operating agreements and authorized to do so by the Order appointing him;

(c) failed to recoup a single penny of Fund assets despite having spent approximately $2.5 million – or more than 80% of the assets entrusted to him.  Defendant has essentially nothing to show for all of that money he paid to himself and his law firm;

(d) more specifically, failed to even attempt to recoup, much less recoup, any of the illegal, preferential, and grossly excessive payments that Mr. Tabatabai made to his friends, family and wife while in sole control of the Fund.  Defendant did so knowingly, and collaborated

with Mr. Tabatabai, to protect himself and his firm from potential lawsuits from these

investors, putting his own personal financial interests ahead of that of the Fund and Plaintiffs;

(e) did such a poor job investigating and learning about the Fund's history and operations that

over a year into his reign, Defendant was completely unaware that Mr. Tabatabai had

illegally paid himself $300,000 of Fund assets while in sole control of the Fund.  This was

discovered by counsel for Mr. Pauls, and while the arbitrator ultimately ordered Mr.

Tabatabai to pay back most of these funds, that was due exclusively to the work of Mr.

Pauls' counsel as Defendant supported Mr. Tabatabai's argument that he was entitled to keep

those funds.  Despite that the arbitrator has ordered Mr. Tabatabai to pay those funds, he has

not, and Defendant has failed to cause him to do so and likely never will;

(f) failed to seek to recoup any money from anyone, including any of the Fund's purported

attorneys Mr. Bartell, Mr. MacLean and Mr. Cohen who all committed malpractice, who all

were in fact personal attorneys for Mr. Tabatabai and whom Mr. Tabatabai illegally and

improperly paid while in sole control of the Fund.  Mr. Tabatabai used those attorneys not to

protect the interest of the Fund or its investors, but he used them solely to protect his own

personal interests and those of his family and friends that obtained illegal distributions.

While Mr. Bartell was eventually ordered by the arbitrator to pay back $10,000 illegally paid

to him – the only money ever recovered by the Fund – this was again the sole result of the

investigation, arguments and work of counsel for Mr. Pauls.  Defendant was not aware of this

illegal payment until it was brought to his attention more than a year after he took over

control and even after being made aware of the illegal payment did not assist in seeking to

have those funds returned;

(g) rather than seek to recoup any money from these attorneys, *as his very first order of business*

*as trustee without conducting any investigation,* inexplicably paid these lawyers tens of

thousands of additional Fund dollars for services they provided to Mr. Tabatabai while he was solely in control of the Fund;

(h) to make matters much worse, he inexplicably retained two of the attorneys, Mr. MacLean and Mr. Cohen, to represent the Fund and provide him advice despite that they had committed malpractice and conspired with Mr. Tabatabai to defraud Plaintiffs and breach fiduciary duties owed to them;

(i) completely ignored the Fund's books and records and failed to even talk with Mr. Pauls who was responsible for running the Fund and maintaining the books and records until Mr. Tabatabai illegally seized control. Instead, he began a costly and unnecessary year-long project to "reconstruct" the Funds books in a biased manner to attempt to support and prove the false story fabricated by Mr. Tabatabai. Despite Defendant's best efforts to rig the report to support his theory, the result of that report was that Mr. Pauls was actually owed over $200,000 by the Fund. Had Defendant simply distributed the Fund's assets according the Fund's books and records rather than go on a quixotic attempt to prove Mr. Pauls' guilt, every single investor, but especially Plaintiffs, would have received a larger distribution than they ultimately will receive.

(j) voluntarily assisted an obviously baseless Virginia criminal investigation against Mr. Pauls maliciously started by Mr. Tabatabai that resulted in no charges being filed or arrests being made. Defendant assisted Tabatabai and the Virginia authorities, encouraged and stoked the investigation, and wasted tens of thousands of dollars on legal fees, if not more, preparing and providing the investigators documents and other information. This criminal investigation, even if successful, never would have resulted in any money being returned to Fund investors;

(k)  conspired with Mr. Tabatabai and his attorneys to investigate baseless and meritless civil claims against Mr. Kamyans which were never filed by Defendant, provided no benefit to any of the Fund's investors and yet cost investors tens of thousands of dollars. Defendant eventually gave that complaint, which was paid for exclusively with Fund assets, to Tabatabai who put his own name on it, and filed the complaint against Mr. Kamyans in D.C. Superior Court. The claims were facially frivolous and the complaint was dismissed by the Court on the papers with prejudice; and

(l)  retained Mr. Cohen to attempt to fraudulently and illegally extort a settlement from Plaintiff Sam Kamyans, who Mr. Tabatabai had falsely claimed assisted Mr. Pauls. Mr. Cohen tried to shake down Mr. Kamyans by unethically misrepresenting to his attorney that he had authority to file a lawsuit against Mr. Kamyans on behalf of the Liquidating Trustee, when he had been explicitly told he had no such authority. When this was pointed out to Defendant, rather than take any action against Mr. Cohen for his illegal and fraudulent conduct, Defendant Poppiti instead approved of his action and continued paying his bills with Fund assets and continued to retain him to represent the Fund.

38.    Despite that Defendant was now appointed nearly three years ago, Plaintiffs are still awaiting distributions owed to them by the Fund in the amount of over $900,000. However, the Fund does not have nearly enough money left to pay those amounts, and the amount of assets in the Fund continues to dwindle as Defendant continues to charge the Fund for legal fees and expenses while providing no value whatsoever. As the litigation involving the Fund is not close to being over, it is not inconceivable that Plaintiffs will receive nothing in distributions.

39.    Because all of the other Fund Investors have already been paid, they are "out of the money," and essentially all of the continuing activities of Defendant are being funded exclusively by Plaintiffs over their objections because they are providing Plaintiffs no benefit whatsoever.

## CAUSES OF ACTION

### First Cause of Action – Breach of Fiduciary Duty

40.    The allegations in paragraphs 1 through 39 are realleged and incorporated herein.

41.    Defendant Poppiti knowingly agreed to act as liquidating trustee for Fernbank.

42.    As liquidating trustee, Defendant Poppiti owed Fernbank and its investors including Plaintiff fiduciary duties of, among others, care and loyalty.

43.    For the reasons detailed above, Defendant Poppiti repeatedly breached the fiduciary duties he owed to Fernbank and Plaintiffs by, among other things:

   a.    Failing to act in good faith to carry out his duties as liquidating trustee of Fernbank;

   b.    Failing to exercise the care of an ordinarily prudent person in like positions and in a manner he believed to be in the best interests of Fernbank or Plaintiffs;

   c.    Failing to act in the best interest of Fernbank or Plaintiffs;

   d.    Acting adverse, contrary, and in conflict to the best interests of Fernbank and Plaintiffs;

   e.    Failing to use best efforts on behalf of the interests of Fernbank and Plaintiffs;

   f.    Acting in his own interests to the detriment of the interests of Fernbank and Plaintiffs;

   g.    Obtaining personal benefits at the expense of Fernbank and Plaintiffs;

   h.    Failing to administer the trust solely in the interest of Fernbank and its investors including Plaintiffs;

   i.    Failing to fully disclose material facts when dealing for his own account;

   j.    Failing to keep and render clear and accurate accounts of the administration of the trust;

   k.    Failing to take reasonable steps to take, keep control of, and preserve the trust's property;

      l.  Failure to exercise independent judgment;

      m.  Self-dealing; and

      n.  Neglect, imprudence, and want of skill.

44.     Defendant Poppiti's breach of the fiduciary duties that he owed to Plaintiffs has caused damages in an amount to be proven at trial, but which exceeds $900,000.

45.     Defendant's tortious misconduct was done intentionally, and willfully. It displayed a conscious desire to cause Plaintiffs harm, or at a minimum, a callous and reckless indifference to that apparent probability.

### Second Cause of Action – Gross Negligence

46.     The allegations in paragraphs 1 through 45 are realleged and incorporated herein.

47.     Defendant Poppiti knowingly agreed to act as liquidating trustee for Fernbank.  As liquidating trustee, Defendant Poppiti owed Fernbank and its investors including Plaintiff fiduciary duties of, among others, care and loyalty.

48.     For the reasons detailed above, Defendant Poppiti acted grossly negligent to Fernbank and Plaintiffs by, among other things:

      a.  Failing to act in good faith to carry out his duties as liquidating trustee of Fernbank;

      b.  Failing to exercise the care of an ordinarily prudent person in like positions and in a manner he believed to be in the best interests of Fernbank or Plaintiffs;

      c.  Failing to act in the best interest of Fernbank or Plaintiffs;

      d.  Acting adverse, contrary, and in conflict to the best interests of Fernbank and Plaintiffs;

      e.  Failing to use best efforts on behalf of the interests of Fernbank and Plaintiffs;

      f.  Acting in his own interests to the detriment of the interests of Fernbank and Plaintiffs;

      g.  Obtaining personal benefits at the expense of Fernbank and Plaintiffs;

    h.  Failing to administer the trust solely in the interest of Fernbank and its investors including Plaintiffs;

    i.  Failing to fully disclose material facts when dealing for his own account;

    j.  Failing to keep and render clear and accurate accounts of the administration of the trust;

    k.  Failing to take reasonable steps to take, keep control of, and preserve the trust's property;

    l.  Failure to exercise independent judgment;

    m.  Self-dealing; and

    n.  Neglect, imprudence, and want of skill.

49.    Defendant's gross negligence has caused Plaintiffs damages in an amount to be proven at trial, but which exceeds $900,000.

50.    Defendant's gross negligence displayed a conscious desire to cause Plaintiffs harm, or at a minimum, a callous and reckless indifference to that apparent probability.

### Third Cause of Action – Aiding and Abetting Breach of Fiduciary Duty

51.    The allegations in paragraphs 1 through 50 are realleged and incorporated herein.

52.    Alex Tabatabai, as one of the managers of the Fund owed Fernbank and its investors including Plaintiff fiduciary duties of, among others, care and loyalty.

53.    For the reasons detailed above, Mr. Tabatabai repeatedly and intentionally breached the fiduciary duties he owed to Fernbank and Plaintiffs. By Order dated January 28, 2017, the arbitrator in the Arbitration already has found that Mr. Tabatabai had "acted grossly negligently and in bad faith" and "breached the fiduciary duties of loyalty, good faith and care" to the Fund.

54.    For the reasons detailed above, Defendant, when he took over control of the Fund, aided and abetted those breaches of fiduciary duty and knowing failed to take any corrective measures to

address them despite having a duty to do so, and failed to take any actions against Mr. Tabatabai, his friends and family who received preferential payments or the attorneys hired by Mr. Tabatabai.

55.     Defendant also aided and abetted Mr. Tabatabai's failure to make any distributions to Plaintiffs.

56.     Defendant also aided and abetted Mr. Tabatabai's breaches of fiduciary duty in assisting him in threatening, investigating, researching, developing and ultimately filing baseless claims and charges against Mr. Kamyans.

57.     Defendant did so to avoid being sued personally by Mr. Tabatabai and also to increase the amount of fees his firm would receive from this matter.

58.     Defendant's aiding and abetting of the breach of the fiduciary duties that Mr. Tabatabai owed to Plaintiffs has caused damages in an amount to be proven at trial, but which exceeds $900,000.

59.     Defendant's tortious misconduct was done intentionally, and willfully. It displayed a conscious desire to cause Plaintiffs harm, or at a minimum, a callous and reckless indifference to that apparent probability.

### Fourth Cause of Action – Conspiracy to Breach Fiduciary Duty

60.     The allegations in paragraphs 1 through 59 are realleged and incorporated herein.

61.     Alex Tabatabai, as one of the managers of the Fund owed Fernbank and its investors including Plaintiff fiduciary duties of, among others, care and loyalty.

62.     For the reasons detailed above, Mr. Tabatabai repeatedly and intentionally breached the fiduciary duties he owed to Fernbank and Plaintiffs. By Order dated January 28, 2017, the arbitrator in the Arbitration already has found that Mr. Tabatabai had "acted grossly negligently and in bad faith" and "breached the fiduciary duties of loyalty, good faith and care" to the Fund.

63.     As detailed above, after Defendant took over control of the Fund he conspired with Mr. Tabatabai to continue to breach those fiduciary duties and failed to take any measures to rectify Mr.

Tabatabai breached despite having a duty to do so, and failed to take any actions against Mr. Tabatabai, his friends and family who received preferential payments or the attorneys hired by Mr. Tabatabai.

64.     Defendant also conspired with Mr. Tabatabai to not make any distributions to Plaintiffs.

65.     Defendant also conspired with Mr. Tabatabai to breach the fiduciary duty owed to Mr. Kamyans and assisted him in threatening, investigating, researching, developing and ultimately filing baseless claims and charges against Mr. Kamyans.

66.     Defendant agreed to conspire with Mr. Tabatabai to avoid being sued personally by Mr. Tabatabai and also to increase the amount of fees his firm would receive from this matter.

67.     Defendant's conspiracy to breach the fiduciary duties that Mr. Tabatabai owed to Plaintiffs has caused damages in an amount to be proven at trial, but which exceeds $900,000. Defendant's tortious misconduct was done intentionally, and willfully. It displayed a conscious desire to cause Plaintiffs harm, or at a minimum, a callous and reckless indifference to that apparent probability.

## Fifth Cause of Action – Waste and Overbilling

68.     The allegations in paragraphs 1 through 67 are realleged and incorporated herein.

69.     Defendant was appointed the liquidating trustee of the Fund.  When he was appointed, the Fund had about $3.0 million in assets.  Since being appointed liquidating trustee, Defendant has paid himself and his law firm the completely unreasonable amount of over $2.5 million in legal fees and expenses – more than 80% of the assets he was entrusted with.  Despite lavishly spending the investor's funds, Defendant has failed to recover even a single penny for the benefit of Fund investors (and is unlikely to do so anytime soon) or distributed a single penny to Plaintiffs or any other investor.

70.     For the reasons detailed above, Defendant has wasted the Fund's assets and he and his firm has egregiously overbilled the Fund for the services it has provided.

71.     By any measure, the liquidation of the Fund has been a financial disaster and a complete waste for everyone but the trustee.  Defendant Poppiti appointed himself trustee of an entity with less

than $3 million in assets and has already spent well over $2.5 million liquidating it for the supposed benefit of its investors.  Defendant Poppiti has not "liquidated" the Fund, so much as he has squeezed dry that entity for the enrichment of himself, his law firm, and other professionals of his choosing.

72.     Defendant should be required to disgorge all of the fees and expenses that his firm has been paid by the Fund.

WHEREFORE, Plaintiffs respectfully demand the following:

Civil damages in the amount to be proven at trial, but in excess of $900,000;

Pre-judgment interest;

Disgorgement of all fees and expenses paid to Defendant and his law firm Fox Rothschild;

Punitive damages in an amount to be proven at trial;

Attorney's fees and expenses; and

Such other relief as the Court should deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable.

Dated:  June 5, 2018

Respectfully submitted,

Steven K. Barentzen
LAW OFFICE OF STEVEN BARENTZEN
1750 K Street, NW, Suite 700
Washington, DC 20006
Tel:  202.289.4333
Fax:  202.888.6268
steven@barentzenlaw.com

*Counsel for Plaintiffs*